UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RICHARD STAUBITZ, *on behalf of himself and all others similarly situated,*

                     Plaintiff,              **MEMORANDUM AND ORDER**

     v.                                       1:23-CV-6004 (RPK) (LB)

ARTHREX, INC.,

                     Defendant.
-------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Richard Staubitz brings this putative class action asserting common law claims in connection with alleged injuries connected to a medical device manufactured by defendant Arthrex, Inc. He argues that defendant is strictly liable due to a design or manufacturing defect and its failure to warn; that defendant was negligent; and that defendant breached implied warranties. Defendant has moved to strike the complaint's class allegations. For the reasons explained below, the motion to strike is denied.

## BACKGROUND

      The following facts are taken from the complaint and are assumed true for the purposes of this order.

      In late 2022, defendant began marketing, distributing, and selling the Knotless 1.8 Fibertak Soft Anchor (the "Anchor"). Compl. ¶¶ 1, 14–15 (Dkt. #1). The Anchor consists of a polyester sheath, an inserter, and a suture, *id.* ¶ 16, and it is used for joint surgeries, "including for labral tear repairs in the shoulder," to attach bone to soft tissue, *id.* ¶¶ 18–19.

      In April 2023, plaintiff underwent arthroscopic surgery to repair a labral tear in his left shoulder, during which the surgeon used an Anchor to reattach plaintiff's labrum to his shoulder

1

socket. *Id.* ¶¶ 2, 22. Plaintiff suffered lack of mobility and pain after the surgery, and "an X-Ray and CT scan revealed" that those complications "resulted from two metal fragments in [his] shoulder after the Anchor inserters broke." *Id.* ¶¶ 3, 23–24. Plaintiff underwent a second surgery to remove the fragments. *Id.* ¶¶ 6, 25–27.

Plaintiff alleges that the Anchor "suffer[s] from a design or manufacturing defect" and that defendant actually or constructively knew of "latent risks . . . including the risk of Anchor breakage" and failed to disclose those risks. *Id.* ¶¶ 5, 30–32, 44. The complaint lists three other "feasible designs" that "could have . . . prevented" the breakage risk. *Id.* ¶¶ 33–34. It also alleges that either "a mishap in the manufacturing process[,] improper worksmanship," or use of defective materials—such as "an unintended deviation from [defendant]'s specified composite of titanium"—caused a manufacturing defect in the Anchor. *Id.* ¶¶ 35–37.

Plaintiff alleges that an FDA database reveals that defendant received "between 28 and 38 reports of Anchor breakage" before plaintiff's surgery, and that defendant has received approximately 50 reports in total "describing substantially similar [Anchor] breaks." *Id.* ¶¶ 4–5, 42–43.

Plaintiff filed this putative class action in August 2023, *see id.* at 20, asserting common-law claims on behalf of "[a]ll United States residents who suffered physical injuries after an Arthrex Anchor or inserter broke during the applicable statute of limitations," *id.* ¶ 45; *see id.* ¶¶ 46–57. The complaint asserts the following causes of action against defendant: strict products liability for design defect, *id.* ¶¶ 58–64, strict products liability for manufacturing defect, *id.* ¶¶ 65–71, strict products liability for failure to warn, *id.* ¶¶ 72–80, negligence, *id.* ¶¶ 81–86, and breach of implied warranty, *id.* ¶¶ 87–96. It lists several "questions of law and fact common to" the class,

2

principally regarding the issues of duty and breach. *Id.* ¶ 50. Plaintiff seeks compensatory and punitive damages as well as attorney fees and costs. *Id.* at 20.

In October 2023, defendant moved to strike the complaint's class allegations. *See* Mot. to Strike (Dkt. # 23). In support of the motion to strike, defendant argues that plaintiff fails to plead facts that can plausibly satisfy the requirements for a class action under Federal Rule of Civil Procedure 23, that plaintiff's proposed class definition is fatally overbroad, and that, in the alternative, at least those allegations pertaining to out-of-state class members should be struck. *See* Mem. in Supp. of Mot. to Strike ("Mem. in Supp.") (Dkt. #24); Reply in Supp. of Mot. to Strike ("Reply") (Dkt. #27).

## STANDARD OF REVIEW

Rule 23 sets out requirements for class certification that are typically addressed after a class certification motion is filed.

"A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "Those prerequisites require showing that: (1) 'the class is so numerous that joinder of all members is impracticable'; (2) 'there are questions of law and fact common to the class'; (3) 'the claims or defenses of the representative parties are typical' of those of the class; and (4) 'the representative parties will fairly and adequately protect the interests of the class.'" *Ibid.* (quoting Fed. R. Civ. P. 23(a)). Putative class actions like the one contemplated here must also establish that "both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Ibid.* (quoting Fed. R.

3

Civ. P. 23(b)(3)). The Second Circuit also "recognize[s] an implied requirement of ascertainability" under which the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quotation marks and citations omitted).

Rule 12(f) permits a party to move to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." In addition, Federal Rule of Civil Procedure 23(d)(1)(D) empowers courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Nevertheless, motions to strike are a "disfavored" method for determining whether claims warrant class treatment under Federal Rule of Civil Procedure 23. *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citation omitted). Instead, determination of that question is generally "deferred to the class certification stage, when the court has before it a more complete factual record from which to make its determination." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017) (quotation marks and citation omitted).

Motions to strike class allegations may be granted, however, where they "address[] issues separate and apart from the issues that will be decided on a class certification motion," *Zachary v. BG Retail, LLC*, — F. Supp. 3d —, 2024 WL 554174, at *2, *9 (S.D.N.Y. 2024) (citation omitted), or where the movant demonstrates "that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery," *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667 (JMF), 2024 WL 967124, at *4 (S.D.N.Y. Mar. 5, 2024); *accord Carr v. Johnson & Johnson Consumer Inc.*, No. 21-CV-6557 (EK) (JRC), 2023 WL 3504662, at *2 (E.D.N.Y. May 17, 2023). In determining whether it would be impossible to certify a class, courts in this circuit generally look to whether the facts alleged in the complaint plausibly

4

support certification. *See, e.g.*, *Vellon v. Chefs' Warehouse, Inc.*, No. 22-CV-4809 (LTS), 2023 WL 6394228, at *6 (S.D.N.Y. Sept. 30, 2023).

# DISCUSSION

Defendant's motion to strike the complaint's class allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(c) is denied. Defendant's arguments for striking plaintiff's class allegations raise questions about typicality and predominance that are more properly considered at the class certification stage. And defendant's arguments regarding deficiencies in the class definition and inclusion of out-of-state class members also do not justify striking plaintiff's class allegations.

## I. Typicality and Predominance

Defendant's motion to strike based on typicality and predominance is denied, because defendant has not shown that plaintiff will be unable to make the requisite showings regardless of the facts obtained in discovery. In the products-liability context, as in other cases, typicality and predominance arguments are generally considered at class certification, rather than through a motion to strike. *See, e.g.*, *Ostenfeld*, 2024 WL 967124, at *4; *Carr*, 2023 WL 3504662, at *4–5. And as defendant admits, the typicality and predominance issues endemic to products-liability claims do not categorically preclude class certification. *See* Mem. in Supp. 3 (noting that products-liability class actions are "not categorically excluded").

Defendant argues that plaintiff's allegations of typicality and predominance fail to plausibly suggest that those two requirements will be satisfied at the certification stage, principally due to individualized issues of causation and damages. *See* Mem. in Supp. 5–8, Reply 4–6. But while plaintiff might face an "uphill certification battle," that is insufficient to justify striking

5

plaintiff's class allegations in their entirety before a certification motion has even been filed. *Carr*, 2023 WL 3504662, at *5.

"The complaint alleges—at least facially—some issues of fact or law that may be common and typical to all class members, including: a common course of misconduct by [defendant]; typical injuries . . . ; and common questions of . . . whether [the Anchors are] unreasonably dangerous, whether [defendant was] aware of the dangers, and whether [defendant] failed to adequately inform consumers about those dangers." *Ibid.* (emphasis, quotation marks, and citation omitted). While the lawsuit likely also presents individualized questions, it is not possible to discern from the face of the complaint whether those questions will predominate. To preclude certification without "any class discovery [or] the filing of a motion for class certification" would improperly determine predominance based "on assumptions of fact rather than findings of fact." *Parker v. Time Warner Ent. Co.*, 331 F.3d 13, 21 (2d Cir. 2003) (reversing district court denial of class certification on superiority and manageability grounds). Accordingly, "courts routinely deny motions to strike class allegations" where the complaint plausibly raises common issues even if other "individualized issues of causation . . . and damages are . . . likely to predominate." *Ostenfeld*, 2024 WL 967124, at *4. The same goes for the issue of typicality. While defendant points to "widely varying experiences" among those patients subject to the adverse reports cited in the complaint, those "atypicalities are only . . . relevant to individual causation and damages for personal injuries" and do not necessarily prevent plaintiff from establishing typicality. *In re Amla Litig.*, 282 F. Supp. 3d 751, 758 (S.D.N.Y. 2017); *see* Reply 4–5.

Defendant's typicality and predominance arguments may well succeed at the certification stage, but they are insufficient to bar plaintiff's class allegations based on nothing other than the complaint.

## II. Class Definition

Defendant's motion to strike based on asserted deficiencies in plaintiff's class definition is also denied.

Defendant argues that plaintiff's proposed class definition is fatally overbroad because it includes individuals who lack Article III standing and individuals whose claims are barred by the economic loss rule. Mem. in Supp. 8–11; Reply 6–7. But this overbreadth argument cannot support striking plaintiff's class allegations because plaintiff's class definition is freely amendable prior to final class certification. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *see also Zachary*, 2024 WL 554174, at *9 (denying motion to strike class allegations relying on argument that class definition described "an impermissible 'fail-safe' class" because "courts have broad discretion to modify the class definition as appropriate" (quotation marks and citation omitted)). And that remains the case even when the alleged deficiency pertains to standing under Article III. *See, e.g.*, *Whitfield v. ATC Healthcare Servs., LLC*, No. 22-CV-5005 (JMA) (LGD), 2023 WL 5417330, at *7 (E.D.N.Y. Aug. 22, 2023) ("To the extent Defendant posits that some members of the proposed class and subclass may prove not to have Article III standing, that question is appropriately addressed at the class certification stage, where, with the benefit of discovery, the Court may better address class-wide Article III concerns."); *Urgent One Med. Care, PC v. Co-Options, Inc.*, No. 21-CV-4180 (JS) (SIL), 2022 WL 4596754, at *7 (E.D.N.Y. Sept. 30, 2022) ("[I]t is when certifying a class that the court must ensure the class is defined in a manner that all its members would have standing.").

The cases on which defendant relies in moving to strike based on plaintiff's class definition are inapposite. *Kassman v. KPMG LLP* struck certain claims which were categorically barred by statute, 925 F. Supp. 2d 453, 469–70 (S.D.N.Y. 2013), and several other cases addressed deficiencies in class definitions at the certification stage rather than through a motion to strike, *see, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1263 (11th Cir. 2019); *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 391 (N.D.N.Y. 2018); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 457–58 (S.D.N.Y. 2005).

That plaintiff's proposed class definition might require amendment is insufficient to bar plaintiff's class allegations at this early stage.

### III. Out-of-State Class Members

Defendant also fails to justify striking plaintiff's class allegations as they pertain to out-of-state class members due to complications regarding choice-of-law, standing, and personal jurisdiction. Mem. in Supp. 11–17; Reply 7–10. As defendant acknowledges, *see* Reply 8 n.9, "any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)," *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018); *see id.* at 97 (noting that whether "any variations in relevant state laws" preclude class certification is a question of predominance). Courts in this circuit therefore routinely deny motions to strike asserted on the basis that inclusion of out-of-state class members would be improper. *See, e.g.*, *DeSimone v. Select Portfolio Servicing, Inc.*, — F. Supp. 3d —,2024 WL 4188851, at *28 (E.D.N.Y. 2024); *Woodhams v. Pfizer, Inc.*, No. 18-CV-3990 (JPO), 2021 WL 5304309, at *3, *6 (S.D.N.Y. Nov. 15, 2021); *cf. Williams v. Binance*, 96 F.4th 129, 145 (2d Cir. 2024) (holding that it "was improper" to dismiss "claims asserted on behalf of absent class members under [certain] statutes of [other]

8

states" at "the motion to dismiss stage"). Defendant fails to offer a persuasive reason for departing from that practice here, because defendant has not shown that, regardless of the facts obtained in discovery, plaintiff will be unable to satisfy predominance, even for out-of-state plaintiffs. Accordingly, defendant's motion to strike plaintiff's class allegations on behalf of out-of-state class members is denied.

## CONCLUSION

Defendant's motion to strike is denied.

SO ORDERED.

Dated: September 29, 2024                      /s/ *Rachel Kovner*
       Brooklyn, New York              RACHEL P. KOVNER
                                                    United States District Judge